**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JOHN D. ERNESTBERG, | ) |
| | ) 2:08-cv-01304-RCJ-RJJ |
| Plaintiff, | ) |
| | ) |
| vs. | ) **ORDER** |
| | ) |
| MORTGAGE INVESTORS GROUP; RECONTRUST COMPANY; COUNTRYWIDE HOME LOANS SERVICING, LP; and DOES I through X, | ) |
| | ) |
| Defendants. | ) |

Plaintiff John D. Ernestberg ("Plaintiff"), who is appearing pro se, filed the present lawsuit against Defendant Mortgage Investors Group ("MIG"), Defendant Recontrust Company ("Recontrust"), and Defendant Countrywide Home Loans Servicing LP ("Countrywide") to challenge a nonjudicial foreclosure on real property formerly owned by Plaintiff. Defendants have filed motions to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted (#9, #21) and to set aside an entry of default against Defendants (#13). Plaintiff has also filed a Motion to Strike. (#17). For the following reasons, Defendants' motions are GRANTED and Plaintiff's motion is DENIED.

**I.    BACKGROUND**

On November 8, 2005, Defendant MIG issued a loan to Plaintiff in the original principal amount of $374,100.00 (the "Loan"). (#9, Ex. 1). The Loan was secured by a deed of trust covering 9204 Worsley Park place, Las Vegas, Nevada (the "Subject Property"), recorded as Document Number 200511117-0002313 in the Clark County Recorder's Office (the "Deed of Trust"). (*See id.*).

1   By at least December 28, 2005, the Loan was sold and transferred to Defendant Countrywide.
2   (#23, Ex. B). On May 29, 2008, Defendant Recontrust was substituted as the trustee. (#9, Ex. 5).
3   Because Plaintiff had been in default on the Loan since January 2008, once substituted as trustee,
4   Defendant Recontrust immediately issued and recorded a Notice of Default and Election to Sell. (#9,
5   Ex. 6).

6   On September 23, 2008, Defendant Recontrust conducted a foreclosure sale and sold the
7   Subject Property to Bank of New York (the "Purchaser"). (#9, Ex. 8). The amount of unpaid debt
8   at the time of the foreclosure sale was $431,418.33. The Purchaser paid $278,800 for the Subject
9   Property. (*See id.*).

10   Several days after the foreclosure sale, Plaintiff filed the present lawsuit. (#1). The
11   Complaint presents three claims: (1) Defendants were not authorized to foreclose on the Subject
12   Property because none of them were holders in due course; (2) the Notice of Default and resulting
13   foreclosure sale were void because the entity that filed the document was not registered to do
14   business in the state of Nevada; and (3) because a dispute exists between Plaintiff and Defendants,
15   declaratory relief is appropriate. Plaintiff asks the Court to set aside the foreclosure sale and to
16   reconvey the Subject Property to Plaintiff.

17   Another issue exists regarding the Clerk of Court's Entry of Default against Defendants.
18   Plaintiff filed his lawsuit on September 26, 2008. Defendants were served with process on October
19   7, 2008, making the Answer or other responsive pleading due on October 27, 2008. Defendants filed
20   a motion to dismiss on October 29, 2008 (#9). Plaintiff filed a motion for entry of clerk's default
21   on October 29, 2008 (#11). The Clerk of Court entered default against Defendants on October 30,
22   2008. (#12). As a result, Defendants have filed a motion to set aside the Clerk of Court's entry of
23   default. Plaintiff has filed a motion to strike the motion to dismiss.

## II. MOTION TO SET ASIDE DEFAULT

Defendants have moved to set aside the default entered against Defendants by the Clerk of the Court. Pursuant to Federal Rule of Civil Procedure 55(c), a court may set aside an entry of default for "good cause shown." In general, a more lenient standard is applied when determining whether to set aside an entry of default than is applied to vacating a default judgment. *See Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986) (per curiam) ("The court's discretion is especially broad where . . . it is entry of default that is being set aside, rather than a default judgment"). When exercising its discretion under Rule 55, the court's "underlying concern . . . is to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986). The overriding judicial goal of deciding cases correctly, on the basis of their legal and factual merits, is to be balanced out with the interests of both litigants and the courts in the finality of judgments. *See Pena v. Seguros La Comerical*, 770 F.2d 811, 814 (9th Cir. 1985).

The Court considers the following factors when deciding whether to set aside the entry of default: (1) whether the defendant's culpable conduct led to the default; (2) whether the defendant has a meritorious defense; and (3) whether reopening the default would prejudice the plaintiff. *See TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). The party seeking to invoke Rule 55(c) bears the burden of demonstrating that these factors favor setting aside the default. *See id.*

The Court finds that Defendants' conduct does not qualify as "culpable." Under this prong, where a defendant has received actual or constructive notice that suit has been filed and has intentionally failed to answer, a court may find that there has been culpable conduct leading to the default. *See id.* at 697. In this context, "intentional" means that the defendant acted wilfully, deliberately, or in bad faith. *Id.* Where a defendant negligently failed to answer, but then offers a "good faith explanation negating any intention to take advantage of the opposing party, interfere with

1 judicial decision making, or otherwise manipulate the legal process," a court will find that the
2 defendant has not acted intentionally. *Id.* Culpable conduct involves "not simply nonappearance
3 following receipt of notice of the action, but rather conduct which hindered judicial proceedings."
4 *Id*. at 698. Defendants explain that they filed their motion to dismiss two days late because of
5 Defendants' legal counsel's illness during the month of October. According to Defendants' counsel,
6 she contacted Plaintiff about her illness and sought an extension of time, which Defendants' legal
7 counsel believed was granted. Regardless of the explanation, Defendants filed their motion to
8 dismiss only two days late and actually filed it a day before the Clerk of the Court entered default.
9 The day after the Clerk of the Court entered default, Defendants filed their motion to set aside the
10 default. Clearly, Defendants did not engage in bad faith manipulation of the judicial process.

11 The second factor clearly weighs in favor of setting aside the entry of default. This factor
12 requires the defendant to present specific facts constituting a defense. *See TCI Group*, 244 F.3d at
13 700. The moving party must "demonstrate facts or law showing the trial court that a sufficient
14 defense is assertable." *Id*. at 699. For the reasons explained below in connection with the Motion
15 to Dismiss, Defendants have a meritorious defense.

16 Lastly, the third factor weighs in favor of Defendants. The Court finds that Plaintiff would
17 not be prejudiced by reopening the default and adjudicating this case on the merits. A plaintiff is
18 prejudiced by setting aside default if it impedes the plaintiff's ability to pursue his claim. *See TCI*
19 *Group*, 244 F.3d at 701. The mere fact of having to litigate an action on its merits does not
20 constitute prejudice. *See id.* Plaintiff has not asserted any prejudice beyond the mere possibility that
21 Plaintiff may lose if required to litigate his case on the merits. Moreover, public policy supports
22 deciding cases on the merits, and any doubts as to the propriety of the default are usually resolved
23 against the party seeking default. *In re Hammer*, 940 F.2d 524, 525 (9th Cir. 1991).

24
25

1   For the foregoing reasons, Defendants' Motion to Set Aside the Entry of Default is
2 GRANTED. (#13). Because the Court is granting Defendants' Motion to Set Aside the Entry of
3 Default, Plaintiff's Motion to Strike Defendants' Motion to Dismiss is DENIED as moot.

**III.  RULE 12(b)(6) STANDARD**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See North Star Int'l. v. Arizona Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without

1 converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d
2 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule of Evidence 201, a court may take judicial
3 notice of "matters of public record." *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.
4 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to
5 dismiss is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp.*
6 *Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

7 If the court grants a motion to dismiss a complaint, it must then decide whether to grant leave
8 to amend.  The court should "freely give" leave to amend when there is no "undue delay, bad faith[,]
9 dilatory motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . .
10 . the amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371
11 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies
12 of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d
13 655, 658 (9th Cir. 1992).

14 The Ninth Circuit upholds a "policy of liberal construction in favor of *pro se* litigants." *Rand*
15 *v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998).  Litigants have a statutory right to self-representation
16 in civil matters, *see* 28 U.S.C. § 1654, and are entitled to meaningful access to the courts. *See Rand*,
17 154 F.3d at 957 (citation omitted).  To that end, "[i]n civil cases where the plaintiff appears *pro se*,
18 the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt."
19 *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  In particular, *pro se*
20 pleadings must be construed liberally on a defendant's motion to dismiss for failure to state a claim.
21 *See Ortez v. Washington County Oregon*, 88 F.3d 804, 807 (9th Cir. 1996).  "This court recognizes
22 that it has a duty to ensure that *pro se* litigants do not lose their right to a hearing on the merits of
23 their claim due to ignorance of technical procedural requirements." *Balistreri v. Pacifica Police*
24 *Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  However, "a *pro se's* party status does not relieve the
25

party of the burden of alleging sufficient facts on which a recognized legal claim could be based . . . Bald assertions and conclusions of law will not suffice." *Kerr v. Wanderer & Wanderer*, 211 F.R.D. 625, 629 (D.Nev. 2002).

**IV.    RULE 12(b)(6) ANALYSIS**

   **A.    Failure to Produce Note**

Plaintiff's first cause of action alleges that Defendants had a duty to produce the original Note before any of them could commence the nonjudicial foreclosure proceedings. Because Defendants did not produce the original Note, Plaintiff alleges that Defendants did not qualify as holders in due course and had no right to act on the Deed of Trust, declare default, or proceed with the foreclosure.

Nevada law provides that a deed of trust is an instrument that may be used to "secure the performance of an obligation or the payment of any debt." NRS § 107.020. When a debtor defaults, the creditor beneficiary may resort to its security in a trustee's sale as a means of satisfying the debtor's obligation. NRS § 107.080.

The procedure for conducting a trustee's foreclosure sale in Nevada is set forth in NRS § 107.080 *et seq*. The foreclosure process is commenced by the recording of a notice of breach and election to sell by the trustee. NRS § 107.080(2)(b). After the notice of default is recorded, the trustee must wait three months. NRS § 107.080(2)(c). The trustee must then give notice of the time and place of the sale. NRS § 107.080(4). A sale is conducted, monies are bid, and a trustee's deed is issued. Foreclosure procedures must be followed or the sale will be invalid. *See Rose v. First Fed. Sav. and Loan*, 105 Nev. 454, 777 P.2d 1318 (1989) (trustee's sale invalid where notice requirements not satisfied).

Section 107.080 provides that the "power of sale" is conferred upon the "trustee." Shortly after Defendant MIG issued the Loan to Plaintiff, Defendant MIG transferred the Loan and related Deed of Trust to Defendant Countrywide. Defendant Countrywide subsequently substituted Defendant Recontrust as Trustee. The Substitution of Trustee made clear that Defendant Recontrust

1  was the substituted Trustee.  (#9, Ex. 4).  Section 107.080(b) expressly states that the trustee can
2  execute its power of sale once "[t]he beneficiary, the successor in interest of the beneficiary or the
3  trustee first executes and causes to be recorded in the office of the recorder of the county wherein
4  the trust property, or some part thereof, is situated a notice of the breach and of his election to sell
5  or cause to be sold the property to satisfy the obligation."  Plaintiff has failed to cite to any authority
6  under Nevada law that states that a trustee's power of sale is tied to the presentment of the original
7  note to the debtor.  Thus, under NRS § 107.080, Defendant Countrywide, as successor in interest of
8  the original beneficiary, and Defendant Recontrust, as trustee, were authorized to begin the
9  nonjudicial foreclosure process by recording the Notice of Default and Election to Sell.
10       In support of Plaintiff's argument that Defendants lacked standing to proceed with the
11  nonjudicial foreclosure of the Subject Property because they failed to provide the original Note,
12  Plaintiff cites to a nonbinding opinion from an Ohio federal court, *In re Foreclosure Cases*
13  *(Deutsche Bank Nat'l Trust Co. v. Moore)*, Case No. 1:07CV2282 (N.D.Ohio Oct. 31, 2007).
14  However, the referenced case is distinguishable as it dealt with judicial foreclosure proceedings
15  brought by lenders, in contrast to the present situation.  The present lawsuit involves a nonjudicial
16  foreclosure, as expressly allowed under Nevada law.  Plaintiff fails to convince the Court why the
17  holding is applicable here.  As explained above, Nevada law articulates the procedures by which a
18  nonjudicial foreclosure may be conducted, which Defendants followed in relation to Plaintiff's Loan
19  and Deed of Trust.  Furthermore, at least under California law, an "allegation that the trustee did not
20  have the original note or had not received it is insufficient to render the foreclosure proceeding
21  invalid."  *Neal v. Juarez*, 2007 WL 2140640 (S.D. Cal. July 23, 2007) (citing *R.G. Hamilton Corp.*
22  *v. Corum*, 218 Cal. 92, 97, 21 P.2d 413 (1933) and *California Trust Co. v. Smead Inv. Co.*, 6
23  Cal.App.2d 432, 435, 44 P.2d 624 (1935).  *See, e.g., Commercial Standard Ins. Co. v. Tab Constr.,*
24  *Inc.*, 583 P.2d 449, 451 (Nev. 1978) (stating that Nevada courts often look to California law where
25  Nevada law is silent).

1  In short, Defendant MIG transferred the Loan and Deed of Trust to Defendant Countrywide,
2  which Countrywide was permitted to enforce, which it did through the process provided under
3  Nevada law.  For the foregoing reasons, Plaintiff's first cause of action is dismissed without leave
4  amend.

5  **B.  Failure to Register in Nevada**

6  Plaintiff's second count argues that because a company called First American Title, which
7  acted in the capacity as an agent for Defendant Recontrust, filed the Notice of Default and Election
8  to Sell, the resulting foreclosure sale was void.  NRS 80.010 states that "[b]efore commencing or
9  doing any business in this State, each corporation organized pursuant to the laws of another state,
10 territory, the District of Columbia, a possession of the United States or a foreign country that enters
11 this State to do business must" register with the Nevada Secretary of State.  However, the Nevada
12 legislature has identified certain activities that do not constitute "transacting business" in the state,
13 which exempts such entities from having to comply with the registration requirements.  These
14 activities include "(a) maintaining, defending or settling any proceeding . . . (g) creating or acquiring
15 indebtedness mortgages and security interest in real or personal property, (h) securing or collecting
16 debts or enforcing mortgages and security interests in property securing the debts."  NRS § 80.015.
17 The actions of First American Title, which were directed at enforcing mortgage rights, fall within
18 the exemptions of the Nevada statute.  Therefore, First American Title was not required to register
19 with the Nevada Secretary of State.  Furthermore, First American Title was merely acting in a
20 representative capacity for Defendant Recontrust, which is a corporation formed under the laws of
21 the state of Nevada and which is the company that actually carried out the foreclosure.

22 For the foregoing reasons, Plaintiff's second cause of action is dismissed without leave to
23 amend.

24 **C.  Wrongful Foreclosure**

25 In short, Plaintiff's lawsuit asserts that Defendants wrongfully conducted the foreclosure of

the Subject Property and asks the Court to set the foreclosure aside. "An action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale." *Collins v. Union Federal Sav. & Loan Ass'n*, 662 P.2d 610, 623 (Nev. 1983) (citations omitted). Therefore, "the material issue of fact in a wrongful foreclosure claim is whether the trustor was in default when the power of sale was exercised." *Id.* Plaintiff does not contest that he defaulted on the Loan. Therefore, Defendants had a right to foreclose.

### D. Declaratory Relief

Plaintiff's third count merely states that "a plausible and judicial dispute exists between the Plaintiff and the Defendants concerning the rights and Title to the Property under foreclosure actions." As a consequence of this dispute, an actual and justiciable controversy exists between the Plaintiff and the Defendants." (#1 at 20–21). Plaintiff's third count appears to plead a cause of action for declaratory relief.

Declaratory judgments generally serve to resolve uncertainty faced by potential defendants who face threats of litigation and who may accrue legal liability while waiting for potential plaintiffs to initiate a suit. *See Societe de Conditionnement en Aluminum v. Hunter Engineering Co., Inc.*, 655 F.2d 938 (9th Cir. 1981). The decision whether or not to hear a declaratory judgment action is left to the discretion of the federal court. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008). Thus, the federal court may decline to address a claim for declaratory relief "[w]here the substantive suit would resolve the issues raised by the declaratory judgment action, . . . because the controversy has 'ripened' and the uncertainty and anticipation of litigation are alleviated." *Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987).

Because Plaintiff has no claim for relief for the foreclosure of the Subject Property, Plaintiff has no adequate legal basis for relief. Thus, the Court declines to exercise and denies Plaintiff's

1  request for declaratory relief.  As a result, Plaintiff's third cause of action is dismissed without leave

2  amend.  In light of the foregoing, Defendants' Motion to Dismiss is GRANTED.

## CONCLUSION

4  IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (#9, #21) is GRANTED

5  without leave to amend.  IT IS FURTHER ORDERED that Defendants' Motion to Set Aside the

6  Entry of Default (#13) is GRANTED.  IT IS FURTHER ORDERED that Plaintiff's Motion to

7  Strike Defendants' Motion to Dismiss is DENIED.  (#17).

8  DATED: January 22, 2009

_____
Robert C. Jones
United States District Judge

25  (bb)